Matter of Mauser (2020 NY Slip Op 03294)





Matter of Mauser


2020 NY Slip Op 03294


Decided on June 11, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 11, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, Presiding Justice, Rosalyn H. Richter, Barbara R. Kapnick, Angela M. Mazzarelli, Peter H. Moulton, Justices.


&em;

[*1]Marc Richard Mauser, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Marc Richard Mauser, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on December 9, 1987.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Kathy W. Parrino, of counsel), for petitioner.
Hal R. Lieberman, Esq., for respondent.
Motion Nos. 8069/8875 - January 13, 2020
IN THE MATTER OF MARC R. MAUSER , AN ATTORNEY



PER CURIAM


Respondent Marc R. Mauser was admitted to the practice of law in the State of New York by the Second Judicial Department on December 9, 1987, under the name Marc Richard Mauser, and at all times relevant herein maintained an office for the practice of law within the First Department.
Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8(a)(5)(i) provides that, at any time after the Committee files a petition alleging professional misconduct against an attorney, the parties may file a joint motion requesting the imposition of discipline by consent, which must include a stipulation of facts, the respondent's conditional admission of acts of professional misconduct and specific rules or standards of conduct violated, any relevant aggravating and mitigating factors, and an agreed-upon disciplinary sanction (see 22 NYCRR 1240.8 [a][5][i]. If the motion is granted, the Court must issue a decision imposing discipline upon the respondent based on the stipulated facts and as agreed upon in the joint motion (22 NYCRR 1240.8[a][5][iv]).
By joint motion, the Attorney Grievance Committee (AGC) and respondent ask this Court, pursuant to the framework outlined above, to censure respondent. The motion is supported by a joint affirmation which contains a statement of facts, conditional admissions, factors in aggravation and mitigation, and agreed upon discipline. The motion is further accompanied by respondent's affidavit acknowledging his admission to the stipulated facts, his consent to the agreed upon discipline, which he has freely and voluntarily given, and his full awareness of the consequences of such consent.
The parties have filed an admission of facts which, based on a single incident of neglect of a client matter, cites respondent's violation of six of the New York Rules of Professional Conduct (22 NYCRR 1200.0). The client was the daughter of, and personal representative of the estate of, a decedent who in 2003 had retained respondent's law firm to represent him in a personal injury matter. In 2014, nine years after the decedent's death and two years after the daughter's appointment, respondent became the lead attorney on the matter and supervised a team of other attorneys and support staff. In October 2014, the client filed a complaint alleging that respondent failed to communicate with her about the case. In or about March 2015, the AGC referred the matter to the New York City Bar Association (NYCBA) for mediation.
In or about November 2016, the parties to the personal injury matter agreed in principle to a settlement of $75,000, but, before finalizing the agreement, respondent needed to obtain the consent of two lienholders, the New York State Insurance Fund (NYSIF) and the Special Funds Conservation Committee (Special Funds). Special Funds agreed to reduce its lien to $30,000, which was to be jointly split with NYSIF, subject to the latter's agreement. Neither respondent nor his staff promptly followed up with NYSIF to obtain its consent. Ultimately, in or about October 2017, the worker's compensation lien was resolved for $36,000 because NYSIF would not consent to the lesser amount agreed to by Special Funds.
In November 2016, respondent emailed the client and the mediator to confirm the $75,000 settlement and reduced worker's compensation lien. Between January and April 2017, respondent represented to them that he had to obtain a consent letter from the worker's compensation lien holders, and expected the Surrogate's Court to approve the settlement by mid-May 2017. However, at that time respondent had still not even petitioned the Surrogate's Court for a Death Compromise Order (DCO), which was necessary for the settlement to be finalized.
In early June 2017, the mediator informed the client that, with one exception, respondent had not answered his emails and phone calls inquiring about the status of the client's case, and suggested that she contact the Surrogate's Court to ascertain it. In mid-June, the client contacted the court and learned that there was no pending motion, nor had there been any activity on the estate case since 2012. The client sent an email with this information to the mediator, copying respondent, and complained in the email that she had been unable to reach respondent. Still, respondent failed to contact the client or to take any significant action to further her case. On June 15, 2017, the mediator informed the parties and the NYCBA that he was closing the mediation because of the lack of cooperation on respondent's part.
In or about August 2017, the client filed a new complaint alleging that respondent was not responding to her calls or emails. On or about October 10, 2017, respondent's firm arranged for another law firm to petition the Surrogate's Court for a DCO. That firm contacted the client to confirm the names and addresses of the distributees who were to receive the settlement funds; however, in November 2017, she told respondent's staff that she did not want to move forward with the case because she had unsuccessfully been trying to speak with respondent for a year. Nevertheless, respondent continued to ignore the client's attempts to communicate with him.
In his November 14, 2017 answer to the new complaint, respondent denied neglecting the client's case, claiming that he had kept her reasonably informed about its status, and asserting that it was miscommunication between the NYSIF and Special Funds which had delayed issuance of the DCO by the Surrogate's Court. In February 2018, the AGC requested a status update on the case, to which respondent responded that there had been no further developments and alleged that the client was not cooperating with efforts to finalize the DCO petition. However, he failed to disclose the client's wish to speak with him before proceeding further with her case. By a letter dated May 24, 2018, the AGC asked respondent to indicate the last time he directly communicated with the client. On June 4, 2018, respondent called the client, after which she agreed to proceed with the case. By June 5, 2018 response to the AGC, respondent disclosed that prior to the June 4 call, his last direct communication with the client was a November 21, 2016 email.
In July 2018, the DCO petition was filed with the Surrogate's Court, which issued a DCO in October 2018 authorizing the $75,000 settlement and the disbursement of funds. Between November 2018 and April 2019, respondent failed to disburse the client's share of the settlement funds despite her inquiries concerning same. Further, respondent's staff did not call her until March 19, 2019 to discuss the release forms, which she executed the next day. In April 2019, respondent's firm issued two settlement checks to the other beneficiaries. In a May 10, 2019 letter to the AGC addressing the delay in disbursement of the settlement funds, respondent asserted that it was the result of the court system and the client's alleged failure to cooperate with her attorneys, and he requested that her complaint be dismissed. The client received her settlement funds on May 18, 2019.
As required, respondent conditionally admits that his actions, as set forth above, violated the charges alleged in the
Petition of Charges, to wit, that he:
ù neglected a legal matter entrusted to him in violation of New York Rules of Professional Conduct rule 1.3(b) when he failed to take any meaningful action in the personal injury case from November 2016 to October 2017;
ù failed to promptly comply with a client's reasonable requests for information in violation of rule 1.4(a)(4) when he failed to communicate directly with the client for approximately 18 months, despite her repeated requests to speak with him directly about the personal injury case;
ù failed to act with reasonable diligence and promptness in representing a client in violation of rule 1.3(a) when he and/or his staff failed to promptly finalize the paperwork to obtain the settlement funds and distribute the settlement funds within 15 days of receipt as required by 22 NYCRR 603.25(d)(1);
ù failed, in violation of rule 5.1(b)(2), to make reasonable efforts to ensure that a lawyer, over whom he had direct supervisory authority, conformed with the NY Rules of Professional Conduct when he failed to ensure that his supervisees diligently handled the personal injury case;
ù failed to adequately supervise the work of the nonlawyer staff of his law firm in violation of rule 5.3(a) when he failed to ensure that his supervisees diligently handled the personal injury case;
ù engaged in conduct involving dishonesty, deceit or misrepresentation in violation of rule 8.4(c) when he breached his duty to provide accurate information and repeatedly informed the mediator and/or his client that the personal injury settlement was pending Surrogate Court's approval when there was no petition before the court; and
ù engaged in conduct involving dishonesty, deceit or misrepresentation in violation of rule 8.4(c) when he asserted to the Committee that it was a "miscommunication between the NYSIF and the Special Funds, which delayed the filing of the required Death Compromise Order with the Surrogate's Court" and that "[d]elays in finalizing the case were caused entirely by the court system and the client's noncooperation with her attorneys."
The parties agree that respondent's conduct was
aggravated by his failure to avail himself of an opportunity to resolve the initial complaint of failure to communicate without discipline when the Committee referred it to mediation, and that, thereafter, he proceeded to commit further misconduct, which delayed receipt of the settlement funds for approximately 2½ years. In terms of mitigation, the parties jointly noted that respondent has never been disciplined or sanctioned by any court, and that he unequivocally accepts full responsibility for his misconduct and is deeply remorseful. They further agreed that respondent lacked a venal or selfish motive and that, at the end of November 2016, he reasonably believed that his involvement in the case was essentially over because: (i) he had achieved a $75,000 settlement to which the daughter consented on behalf of the estate; (ii) he had negotiated the liens down; (iii) as a remedial measure for the delay, he convinced his firm to reduce its legal fee to $5,000 and thereby secured a recovery of $40,000 for the estate; and (iv) the remaining work on the matter was purely administrative and typically performed by junior associates and paralegals who would coordinate with the other firm to obtain the Surrogate Court's approval of the settlement and issuance of the settlement check.
The parties agree that the appropriate sanction for respondent's conduct is a public censure. Indeed, the sanction proposed by the parties is supported by case law cited by the parties (see Matter of Thomas, 159 AD3d 35 [1st Dept 2018]; Matter of Shaw, 137 AD3d 19 [1st Dept 2016]); Matter of Gilbert, 131 AD3d 171 [1st Dept 2015]). In light of this precedent, we see no reason to disturb the sanction to which respondent, who is represented by competent counsel, has consented.
Accordingly, the parties' joint motion for discipline by consent should be granted, and respondent should be publicly censured. The Committee's Petition of Charges is denied as moot.
All concur.
Order filed. [June 11, 2020]
The parties' joint motion for discipline by consent (M-8875) is granted and respondent is publicly censured. The Committee's Petition of Charges (M-8069) is denied as moot.